**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY P.O. Box 145496 Cincinnati, Ohio 45250-5496 )))))) | |
|     Plaintiff, )) | |
| v. ) | Civil Action No.: _____ |
| )) | |
| CODE 3 SECURITY & PROTECTION SERVICES, INC. 3273 Pine Orchard Lane, Suite D Ellicott City, Maryland 21042 ))))) | |
|     Serve:  VAHID MEMIC, Registered Agent 635 Edgewood Street, NE Washington, DC  20018 )))) | |
| TREVER D. EDELIN 611 Edgewood Street, NE, #324 Washington, DC 20017 )))) | |
|     Serve:  611 Edgewood Street, NE, #324 Washington, DC  20017 ))) | |
| KEITH LOVING 3721 Jay Street, NE #3 Washington, D.C. 20019 )))) | |
|     Serve:  3721 Jay Street, NE, #3 Washington, DC  20019 ))) | |
|     Defendants. )) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Cincinnati Specialty Underwriters Insurance Company ("Cincinnati"), by counsel, hereby files this Complaint seeking a declaration of rights and obligations, and states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332.

2.      Venue is proper pursuant to 28 U.S.C. § 1391.

3.      The amount in controversy exceeds $75,000.

4.      Pursuant to 28 U.S.C. § 2201, Cincinnati seeks a declaration of the parties' rights and obligations under the liability insurance contracts at issue in this proceeding.

## PARTIES

5.      Plaintiff Cincinnati is an insurance company incorporated under the laws of Ohio and has its principal place of business in Ohio.

6.      Defendant Code 3 Security & Protection Services, Inc. ("Code 3") is incorporated under the laws of Maryland and has its principal place of business in Maryland.

7.      Defendant Trever D. Edelin ("Edelin") is a citizen of the District of Columbia.

8.      Defendant Keith Loving ("Loving") is a citizen of the District of Columbia.

## FACTS

9.      This declaratory judgment action arises from a tort lawsuit filed by Loving against Code 3 and Edelin, which is captioned *Loving v. Code 3 Security & Protection Service, Inc., et al.*, Civil Action No. 14-008043 and which is pending in the Superior Court for the District of Columbia (the "Underlying Lawsuit").  A true and correct copy of the Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit 1.

10.     In the underlying action, which speaks for itself, Loving seeks damages from Code 3 and Edelin arising from an alleged confrontation between Edelin and Loving at a residential property located in Northeast Washington, D.C.  Specifically, Loving alleges as follows in the Underlying Lawsuit:

2

- On December 20, 2013, as Loving was walking from Paradise Manor, a residential property, to Mayfair Mansion, a neighboring residential property, Edelin, who was working as a Special Police Officer for Code 3, aggressively approached Loving.

- Without any cause or justification, Edelin sprayed oleoresin capsicum pepper spray into Loving's eyes.

- Thereafter, while Loving was stumbling in the parking lot, Edelin shot his firearm at Loving from a distance of about 15 feet.

- After Loving responded, "you shot me," Edelin fired additional shots in the direction of Loving.

- At least four bullets struck Loving.

Ex. 1, ¶¶ 9-16.

11.    In the Underlying Lawsuit, Loving asserts one cause of action against Code 3, alleging, "Code 3, through the conduct of Edelin, was negligent in its treatment of Mr. Loving."

12.    In the Underlying Lawsuit, Loving asserts two causes of action against Edelin, one for Assault and one for Battery.

13.    Loving seeks the recovery of compensatory and punitive damages from both Edelin and Code 3.

14.    Cincinnati issued insurance policy number CSU0046569 to Code 3 for the period from May 18, 2013 through May 18, 2014 (the "Primary Policy").  A true and correct copy of the Primary Policy is attached hereto as Exhibit 2.

15.    The Primary Policy affords each occurrence limits of $1 million and aggregate limits of $2 million.  The Primary Policy also contains a Deductible Liability Insurance endorsement, which establishes a $5,000 per claim deductible for "bodily injury" or "property

damage" claims.  The Primary Policy uses basic form CG 00 01 12 07, which provides, in pertinent part, as follows:

### SECTION 1 – COVERAGES

### COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.  Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.   We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

*   *   *

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period ... .

*   *   *

**2.     Exclusions**

This insurance does not apply to:

**a.  Expected or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\*   \*   \*

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\*   \*   \*

### 2. Duties In The Event Of Occurrence, Offense, Claim or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a "claim". To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received, and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;" . . .

\*   \*   \*

## SECTION V – DEFINITIONS

\*   \*   \*

5

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Ex. 2, Policy Form CG 00 01 12 07.

16.     The Primary Policy also contains an Exclusion – Assault Or Battery endorsement

(the "Assault or Battery Endorsement"), which provides, in pertinent part, as follows:

**A.**   The following exclusion is added to Paragraph **2. Exclusions** of **Section 1 – Coverage A – Bodily Injury and Property Damage Liability,** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**:

a.   This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**(1)** An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;

**(2)** The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or

**(3)** The negligent:

**(a)** Employment;

**(b)** Investigation or reporting or failure to report any assault or battery to proper authorities;

**(c)** Supervision;

**(d)** Training;

**(e)** Retention

Of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph **a.** above.

\*   \*   \*

6

**C.** Exclusion **2.a.** of the Commercial General Liability Coverage Form is deleted in its entirety and replaced with the following:

**2.a.     Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

Policy Form CSGA 301 01 08.

17.    The Primary Policy also contains a Changes To Commercial General Liability Coverage Form endorsement (the "Punitive Damages Endorsement"), which provides, in pertinent part, as follows:

### EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section 1 – Coverage A – Bodily Injury and Property Damage Liability,** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**:

**2.   Exclusions**

This insurance does not apply to:

Any claim of indemnification for punitive or exemplary damages.  If a suit is brought against any insured for a claim covered by this Coverage Part, seeking both compensatory and punitive or exemplary damages, we will provide a defense to such action.  However, we will not have an obligation to pay for any costs, interest or damages, attributable to punitive or exemplary damages.  If state law provides for statutory multiple damage awards, we will pay only the amount of the award before the multiplier is added.

Ex. 2, Policy Form CSGA 401 07 10 at 3 of 3.

18.    By endorsement, the Primary Policy also contains a Security Agency Errors Or Omissions policy form, which provides, in pertinent part, as follows:

**A.** The following is added to **Section I – Coverages:**

**1. Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as damages caused by an "error or omission" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.   We may, at our discretion, investigate any "error or omission" and settle any claim or "suit" that may result.  But:

\* \* \*

b.  This insurance applies to injury only if:

(1) The damages are caused by an "error or omission" that takes place in the "coverage territory";

(2) The "error or omission" occurs during the policy period . . ..

\* \* \*

**2. Exclusions**

This insurance does not apply to:

**a. Excluded Under Coverage A, Coverage B or Coverage C**

Any damages excluded under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability,** Paragraph **2. Exclusions** of **Coverage B – Personal and Advertising Injury** or Paragraph **2. Exclusions** of **Coverage C Medical Payments**, including all exclusions added to these Sections by Endorsement.

\* \* \*

**D.** For purposes of this endorsement, the following are added to **Section V – Definitions:**

**1.** "Error or omission":

    **a.** Means a negligent act, error or omission in rendering or failing to render security or patrol agency services by the insured or someone for whom the insured is legally liable; and

    **b.** Shall include all related "error or omissions" arising out of the rendering or failing to render any security or patrol agency services for any one person or organization as one "error or omission", regardless of the time frame over which such "error or omissions" occur.

Ex. 2, Policy Form CSIA405 (08/09)-A.

19.    Cincinnati also issued Excess Policy number CSU0046573 to Code 3 for the period from May 18, 2013 through May 18, 2014 (the "Excess Policy").  A true and correct copy of the Excess Policy is attached hereto as Exhibit 3.

20.    The Excess Policy affords limits of $4 million each occurrence and in the aggregate.  The Excess Policy uses basic form CSCX 100 02 13, which provides, in pertinent part, as follows:

> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance" unless otherwise directed by this insurance.

*   *   *

**SECTION I – COVERAGE**

**1.  Insuring Agreement**

    **a.** We will pay on behalf of the insured, except as stated in this Coverage Part, those sums in excess of the "retained limit" any insured becomes legally obligated to pay as damages to which this insurance provided under this Coverage Part applies.

*   *   *

**c.** This insurance applies to damages that are subject to an applicable "retained limit".  If any other limit, such as a sublimit, is specified in "controlling underlying insurance", this insurance does not apply to damages arising out of that exposure unless the limit is specified in the Declarations under the Schedule of "controlling underlying insurance".

\* \* \*

**2. Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part.  The exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part.

\* \* \*

**f.   Fines, Penalties, Punitive, Exemplary, Multiplied or Uninsurable Damages**

\* \* \*

**(2)** Punitive or Exemplary damages;

\* \* \*

**SECTION III – CONDITIONS**

\* \* \*

**3.  Duties In The Event Of Occurrence, Offense, Claim or Suit**

a.  You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a "claim".  To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

          (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.  If a claim is made or "suit" is brought against any insured, you must:

          (1) Immediately record the specifics of the claim or "suit" and the date received, and

          (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.  You and any other involved insured must:

          (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit; . . .

\*   \*   \*

## SECTION IV – DEFINITIONS

\*   \*   \*

**1.** "Controlling underlying insurance" means any policy of insurance or self-insurance listed as such in our Schedule of Controlling Underlying Insurance.

\*   \*   \*

**4.** "Loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

    **a.**  Settlements, judgments, binding arbitration; or

    **b.**  Other binding alternative dispute resolution proceedings entered into with our consent. . . .

**5.** "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim.

Policy Form CSCX 100 02 13.

21.     The Schedule of Controlling Underlying Insurance set forth in the Excess Policy identifies the Primary Policy.  Policy Form CSCX 400 06 09.

22.     On or about April 3, 2015, default was entered against Code 3 and Edelin in the Underlying Lawsuit based on their failure to appear and respond to the allegations set forth in the Complaint.

23.     On or about May 11, 2015, a default judgment was entered against Code 3 and Edelin in the Underlying Lawsuit.  The default judgment was broken down as follows:

- $266,653.00 joint and several compensatory damages against Code 3 and Edelin;

- $799,959 punitive damages against Code 3; and

- $100,000 punitive damages against Edelin.

24.     On or about June 8, 2015, Cincinnati received its first notice of any kind concerning the Underlying Lawsuit or the events alleged therein.

25.     On or about June 11, 2015, counsel engaged personally by Code 3 appeared and moved to vacate the default judgment.

26.     On or about July 29, 2015, the Court vacated the default judgment as to Code 3 in the Underlying Lawsuit.  The default judgment was not vacated as to Edelin.

27.      By letters dated August 31, 2015, Cincinnati agreed to assume the defense of Code 3 and Edelin in the Underlying Lawsuit pursuant to a full and complete reservation of rights.

28.     Upon information and belief, the default judgment entered against Edelin has been vacated.

## CLAIM FOR DECLARATORY RELIEF

29.     Cincinnati realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 28 above.

30.     Cincinnati owes no duty to defend or indemnify Code 3 and Edelin for the claims and allegations asserted in the Underlying Lawsuit.

31.     The terms and provisions of the Assault or Battery Endorsement set forth in the Primary Policy exclude coverage for the claims and allegations asserted in the Underlying Lawsuit.

32.     The terms and provisions of the Assault or Battery Endorsement set forth in the Primary Policy are incorporated into the Security Agency Errors or Omissions endorsement of the Primary Policy such that the claims and allegations asserted in the Underlying Lawsuit are excluded from coverage under the Security Agency Errors or Omissions endorsement.

33.     The terms and provisions of the Assault or Battery Endorsement set forth in the Primary Policy are incorporated into the Excess Policy such that the claims and allegations asserted in the Underlying Lawsuit are excluded from coverage under the Excess Policy.

34.     The terms and provisions of the Punitive Damages Endorsement set forth in the Primary Policy bar coverage for any punitive damages that have been, or may be, awarded against Edelin and/or Code 3.

35.     The terms and provisions of the Punitive Damages exclusion set forth in the Excess Policy bar coverage for any punitive damages that have been, or may be, awarded against Edelin and/or Code 3.

36.     Coverage for Edelin is barred under the Primary and Excess Policies for the additional reason that Edelin substantially and materially breached the duties in the event of a suit condition set forth in the Primary and Excess Policies.

37.     An actual controversy exists as to the existence and scope of liability insurance coverage afforded under the Primary and Excess Policies for the claims and allegations asserted against Code 3 and Edelin in the Underlying Lawsuit.

38.     Cincinnati is entitled to a declaration that coverage is barred under the Primary and Excess Policies for the claims and allegations asserted against Code 3 and Edelin in the Underlying Lawsuit.

WHEREFORE, Plaintiff Cincinnati Specialty Underwriters Insurance Company, respectfully prays for the following relief:

a.     That this Court declare that Cincinnati Specialty Underwriters Insurance Company owes no duty to defend Code 3 and/or Edelin in connection with the Underlying Lawsuit.

b.     That this Court declare that Cincinnati Specialty Underwriters Insurance Company owes no duty to indemnify Code 3 and/or Edelin in connection with the Underlying Lawsuit.

c.     That this Court declare that Cincinnati Specialty Underwriters Insurance Company owes no duty to indemnify Code 3 or Edelin for any award of punitive damages in connection with the Underlying Lawsuit.

d.     That this Court grant such other relief as may be warranted, just, necessary and proper under the circumstances.

Dated:  November 18, 2015          Respectfully submitted,


_____/s/_____

Thomas S. Garrett
D.C. Bar No. 462930
Attorney for The Cincinnati Specialty Underwriters
Insurance Company
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
(804) 747-5200
(804) 747-6085 – facsimile
tgarrett@hccw.com